**United States District Court**
**For the District of Maryland**
**at Greenbelt**

_____

| | | |
|---|---|---|
| Patreece Butchee | : | |
| 11068 Mcintosh Court | : | Case No. 8:19-cv-03656 |
| Waldorf, Maryland 20602, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CBRE | : | |
| SERVE: The Corporation Trust, Incorporated | : | |
| 2405 York Road | : | |
| Suite 201 | : | |
| Lutherville Timonium, Maryland 21093-2264 | : | |
| Defendant. | : | |

_____

## COMPLAINT

Plaintiff, Patreece Butchee, for her cause of action against Defendant, CBRE, alleges the following:

### PARTIES

1. Plaintiff is a resident of Charles County, Maryland, who at all times relevant has resided at 11068 Mcintosh Court, Waldorf, Maryland 20602.

2. Defendant is a Delaware corporation; authorized, registered, and conducting business in the State of Maryland, with global headquarters located at 400 South Hope Street, 25th floor, Los Angeles, California 90071.

### JURISDICTION AND VENUE

3. Plaintiff brings her Complaint pursuant to 28 U.S.C. §1331, as this action arises under several Civil Rights statutes enacted by the United States.

4. The District of Maryland at Greenbelt is the appropriate venue as the Defendant maintains facilities and business operations in this District.

## **FACTS**

5. Plaintiff is a forty-five-year-old African-American woman.

6. Defendant is a commercial real estate services and investment firm with over 90,000 employees worldwide, providing services to clients all over the world.

7. Plaintiff was employed as a project manager for Defendant from August 2008 to May 2019.

8. On April 24, 2017, Plaintiff received a promotion to a Senior Project Manager position and was assigned to a new client account.

9. Plaintiff's new position was located at 4100 North Fairfax Drive, Arlington, Virginia 22283.

10. Plaintiff was the only African-American, as well as the only woman, in senior leadership.

11. In addition to her salary, Plaintiff's compensation and benefits included an annual bonus of ten percent of her base salary, unlimited paid time off, enhanced leave of absence benefits, and severance pay.

12. Plaintiff's duties as Senior Project Manager included executing construction projects and renovations, and hiring, on boarding, managing, coaching, and terminating employees.

13. In 2016, Plaintiff received a performance rating that exceeded performance goals.

14. For all other years from 2014 to 2017, Plaintiff received a performance rating that achieved performance goals.

15. From 2017-2018, Plaintiff's immediate supervisor was Jason Baylog.

16. From 2018-2019, Plaintiff's immediate supervisor was Mark Chrywaty.

17. Plaintiff's position required that she work in close proximity and communication with the client and the client's agents of whose account she managed.

18. From 2017-2018, the client's agent was Heidi Ha.

19. From 2018-2019, the client's agent was Kery Crawford.

20. Defendant's Harassment and Violence Free Workplace Policy prohibits unlawful bias, discrimination, harassment, including psychological harassment, on the basis of race, color, sex, age, and physical or mental disability.

21. The aforementioned policy also requires that all employees be treated with dignity and respect, and establishing a zero-tolerance policy for verbal conduct that harasses, disrupts, or interferes with another's work performance or that creates an intimidating, offensive, or hostile work environment.

22. Retaliation against any employee who reports harassment or discriminatory conduct is prohibited.

23. Defendant's policy applies to both employees and clients.

24. All reported allegations of violations of Defendant's harassment policy are to be investigated.

25. On November 15, 2017, a subordinate of Plaintiff, a white male, was promoted to a Finance Manager, a position at the same level as Plaintiff.

26. The aforementioned employee received an annual bonus of fifteen percent of his salary, five percent more than Plaintiff.

27. Plaintiff submitted a request to Mr. Baylog that she receive the title of Director, which other similarly situated male employees with the same job duties and responsibilities held. This request was denied.

28. Ms. Ha consistently yelled at Plaintiff in meetings in front of other employees and berated her competence in emails and in person.

29. Ms. Ha called Plaintiff "inherently defiant" and described her using other racial stereotypes.

30. Although Plaintiff reported Ms. Ha's conduct to Mr. Baylog, no action was taken.

31. Plaintiff also reported Ms. Ha's conduct to Human Resources.

32. On December 23, 2017, Dawn Spillane, Defendant's Senior Managing Director, emailed Plaintiff and told her that Ms. Ha's conduct was not negative.

33. While an independent, third party is supposed to conduct investigations into allegations of harassment, no further action was taken to investigate Ms. Ha's conduct.

34. On December 27, 2017, Plaintiff was treated for an anxiety attack at Patient First, excused from work until December 30, 2017, and referred to her primary care physician for follow-up treatment.

35. On January 4, 2018, Plaintiff was diagnosed by her primary care physician, Dr. Lauren R. Williams, with acute stress disorder aggravated by her occupation.

36. Plaintiff was referred to Dr. John-Paul James for inpatient and outpatient treatment and therapy and placed on medical leave.

37. On March 21, 2018, Defendant published Job Position 18004111, advertising Plaintiff's position, although Plaintiff was still employed and on leave pursuant to the Family Medical Leave Act.

38. On April 5, 2018, Plaintiff was released to return to work, with the requested accommodation that she be assigned to a different account.

39. This accommodation was denied with no explanation.

40. Shortly after her return to work, Plaintiff found discrepancies in a project budget submitted by Ms. Ha, specifically in the actual cost of the budget and from what resources the funds for the budget would be drawn.

41. When Plaintiff refused to submit the budget Ms. Ha prepared, Ms. Ha requested that she be removed from the account.

42. Plaintiff reported Ms. Ha's misconduct to Mr. Baylog, who instructed her to "do what the client wants."

43. Following her report of Ms. Ha's misconduct, Mr. Baylog became increasingly critical of Plaintiff and she was isolated from other members of the senior management team.

44. In the latter half of 2018, Mr. Chrywaty took over as Plaintiff's immediate supervisor.

45. At the same time, Ms. Ha moved to another position and Ms. Crawford took her place.

46. Ms. Crawford replaced Ms. Ha without the client following the required process of outside recruitment and Ms. Ha continued to exercise authority in concert with Ms. Crawford.

47. Ms. Crawford requested that that Plaintiff conceal true costs of a project in a projected budget.

48. When Plaintiff refused, Ms. Crawford stated that Plaintiff was "not a good fit for the culture."

49. Ms. Crawford, like Ms. Ha, began to berate Plaintiff in meetings.

50. In October 2018, Plaintiff reported Ms. Crawford's conduct to Mr. Chrywaty and asked him to mediate.

51. Mr. Chrywaty refused the request to mediate and did nothing about Ms. Crawford's request that Plaintiff misrepresent the budget for a particular project.

52. Following Mr. Chrywaty's refusal, Plaintiff filed an ethics complaint against
Ms. Crawford on the basis of her request that Plaintiff misrepresent the budget and her
hostile comments and actions toward Plaintiff when she refused to do so.

53. On November 6, 2018, Mr. Chrywaty excluded Plaintiff from a meeting with senior
management with no explanation given.

54. After Plaintiff recommended pulling a project in California that did not pass inspection
on November 8, 2018, Plaintiff was again excluded from a team meeting on
November 14, 2018.

55. When Plaintiff confronted Mr. Chrywaty about her exclusion, he yelled at her, called her
aggressive, and advised her not to start with the drama.

56. Mr. Chrywaty admitted in an email sent on November 14, 2018, that he had raised his
tone.

57. Plaintiff's refusal to misrepresent the budget for her assigned account remained a point of
contention between herself and Ms. Crawford, who eventually requested that Plaintiff be
removed from the account again in December 2018.

58. Plaintiff asked for the same programming and resources that her white male counterparts
received and was refused.

59. Defendant began to actively seek a replacement for Plaintiff and her request for a
performance review for 2018 was denied with no explanation.

60. On January 27, 2019, when Plaintiff requested that she be reassigned to another account,
Mr. Chrywaty acknowledged that the current account she was assigned to was a "tough
environment."

61. On January 28, 2019, Plaintiff again had to seek medical treatment and her primary care physician once against diagnosed her with acute stress disorder.

62. Plaintiff was prescribed combined inpatient and outpatient treatment for twelve weeks, to begin on February 4, 2019.

63. On March 8, 2019, all employees were sent annual bonuses, including employees on medical and maternity leave.

64. Plaintiff did not receive her annual bonus on March 8, 2019.

65. On April 26, 2019, Plaintiff was cleared to return to work on April 29, 2019, with the requested accommodation that she not return to the same account.

66. When Plaintiff called Human Resources to discuss her requested accommodations, she was told by Barbara Pettijohn, Defendant's Senior Human Resource Manager, that it was Plaintiff's own fault that she was being treated poorly, that Plaintiff was an attention seeker, and that she "hoped [Plaintiff] would have a job when she got back."

67. Although Plaintiff was given clearance to return to work, she was instead advised that she should apply for long term disability.

68. Plaintiff requested that she be allowed to work "on platform," which would allow her to return to work without being directly assigned to her former account.

69. Plaintiff was denied this accommodation with no explanation.

70. On April 29, 2019, Plaintiff requested a new Human Resource Representative.

71. On May 10, 2019, Plaintiff received an email from Ms. Pettijohn that she had received approval to pay Plaintiff her bonus, and that she would receive her bonus and regular paycheck the following week.

72. On May 17, 2019, Plaintiff did not receive a paycheck or her bonus.

73. On May 17, 2019, Plaintiff emailed Val Kerin, Defendant's Human Resources Director, who advised Plaintiff once again that she should apply for long term disability and that she would check the status of Plaintiff's bonus.

74. To date, Plaintiff has not received her annual bonus nor any other compensation, including her paycheck from Defendant.

75. On May 21, 2019, Plaintiff sent Defendant a letter of resignation.

76. As a direct result of Defendant's actions and omissions, Plaintiff suffered monetary losses, mental anguish, embarrassment and humiliation.

77. On September 30, 2019, Plaintiff filed a charge of discrimination with the United States' Equal Employment Opportunity Commission and a Right to Sue Letter was issued on the same date.

## COUNT I:

## TITLE VII HOSTILE ENVIORNMENT BASED ON RACE

78. Plaintiff incorporates by reference paragraphs 1-77 as if fully set forth under this Count and further alleges:

79. Plaintiff is African-American, a protected class under 42 U.S.C. § 2000e-2(a).

80. Plaintiff was subjected to constant yelling, berating, and disparaging comments by a client from 2017 to 2019 because of her race.

81. The client was subject to the same Harassment and Retaliation Policies as Defendant's employees.

82. The Defendant had actual knowledge of the client's conduct and failed to take immediate and appropriate corrective action.

83. The client's conduct was unwelcome and so severe and pervasive that a reasonable person in Plaintiff's position would find their work environment to be hostile and abusive.

84. Plaintiff believed her work environment to be hostile and abusive as a result of the client's actions, as well as Defendant, and Defendant's agents, actions and omissions.

85. The actions and omissions of the Defendant, and Defendant's agents, were intentional and malicious.

86. As a result of the actions and omissions of the Defendant, and Defendant's agents, Plaintiff has suffered damages in the form of loss wages and benefits, as well as mental anguish, emotional distress, and humiliation.

**WHEREFORE**, Plaintiff respectfully requests Judgment in her favor against Defendant for $300,000.00 in compensatory and punitive damages, plus costs, reasonable attorney's fees, and for such other relief that justice requires.

## <u>COUNT II: TITLE VII</u>

## <u>DISPARATE TREATMENT BASED ON SEX</u>

87. Plaintiff incorporates by reference paragraphs 1-86 as if fully set forth under this Count and further alleges:

88. Plaintiff is woman, a protected class under 42 U.S.C. § 2000e-2(a).

89. Plaintiff was refused the same job title, programming, and other resources, because of her sex.

90. The actions of the Defendant were intentional and malicious.

91. As a result of the actions of the Defendant, Plaintiff has suffered damages in the form of loss wages and benefits, as well as mental anguish, emotional distress, and humiliation.

**WHEREFORE**, Plaintiff respectfully requests Judgment in her favor against Defendant for $300,000.00 in compensatory and punitive damages, plus costs, reasonable attorney's fees, and for such other relief that justice requires.

<u>**COUNT III: TITLE VII**</u>

<u>**RETALIATION FOR REPORTING RACIAL DISCRIMINATION**</u>

92. Plaintiff incorporates by reference paragraphs 1-91 as if fully set forth under this Count and further alleges:

93. Plaintiff was subjected to constant yelling, berating, and disparaging comments by a client from 2017 to 2019 because of her race.

94. The client was subject to the same Harassment and Retaliation Policies as Defendant's employees.

95. Plaintiff reasonably and in good faith believed that the client's treatment of her was an unlawful employment practice.

96. As a result of Plaintiff's report of the client's conduct to Defendant, Defendant, and Defendant's agents, subjected her to greater scrutiny and excluded from senior executive meetings and activities in violation of 42 U.S.C. § 2000e-3(a).

97. As a result of the actions of the Defendant, and Defendant's agents, Plaintiff has suffered damages in the form of loss wages and benefits, as well as mental anguish, emotional distress, and humiliation.

**WHEREFORE**, Plaintiff respectfully requests Judgment in her favor against Defendant for $300,000.00 in compensatory and punitive damages, plus costs, reasonable attorney's fees, and for such other relief that justice requires.

## COUNT IV: TITLE VII

## RETALIATION FOR REPORTING SEX DISCRIMINATION

98. Plaintiff incorporates by reference paragraphs 1-97 as if fully set forth under this Count and further alleges:

99. Plaintiff was refused the same job title, programming, and other resources, because of her sex.

100.      Defendant brought this discrepancy to the attention of Defendant and Defendant's agents.

101.      Plaintiff reasonably and in good faith believed that Defendant's treatment of her was an unlawful employment practice.

102.      As a result of Plaintiff's reporting this discrepancy to Defendant and to Defendant's agents, Plaintiff was subjected to greater scrutiny and excluded from senior executive meetings and activities in violation of 42 U.S.C. § 2000e-3(a).

103.      As a result of the actions of the Defendant, and Defendant's agents, Plaintiff has suffered damages in the form of loss wages and benefits, as well as mental anguish, emotional distress, and humiliation.

**WHEREFORE**, Plaintiff respectfully requests Judgment in her favor against Defendant for $300,000.00 in compensatory and punitive damages, plus costs, reasonable attorney's fees, and for such other relief that justice requires.

## COUNT V: EQUAL PAY ACT

104.      Plaintiff incorporates by reference paragraphs 1-103 as if fully set forth under this Count and further alleges:

105.    As part of Plaintiff's compensation and benefits for her employment, she received a ten percent annual bonus.

106.    Plaintiff's similarly situated male counterparts received more compensation, including receiving a greater annual bonus than Plaintiff, in violation of 29 U.S.C. §206.

107.    The difference in pay was not due to any system of seniority or merit.

108.    As a result of the actions of the Defendant, Plaintiff has suffered damages in the form of loss wages and benefits.

**WHEREFORE**, Plaintiff respectfully requests Judgment in her favor against Defendant for $6,867.00 in back pay, and for such other relief that justice requires.

## COUNT VI: WHISTLEBLOWER PROTECTION ACT

109.    Plaintiff incorporates by reference paragraphs 1-108 as if fully set forth under this Count and further alleges:

110.    Plaintiff reported Ms. Ha and Ms. Crawford, both agents for the client, for ethical violations, including misrepresentations in financial reports.

111.    In addition to reporting the aforementioned violations, Plaintiff refused to make the requested misrepresentations in her financial reporting.

112.    Although Plaintiff was directed by the Defendant to do what the client wants, Plaintiff still refused.

113.    As a result of her refusal, Defendant isolated her from meetings, refused to provide her with a performance appraisal, and ultimately discharged her from employment.

114.       As a result of the actions of the Defendant, and Defendant's agents, Plaintiff has

suffered damages in the form of loss wages and benefits, as well as mental anguish,

emotional distress, and humiliation.

**WHEREFORE**, Plaintiff respectfully requests Judgment in her favor against Defendant for

$300,000.00 in compensatory and punitive damages, plus costs, reasonable attorney's fees, and

for such other relief that justice requires.

### COUNT VII: AMERICANS WITH THE DISABILITIES ACT

115.       Plaintiff incorporates by reference paragraphs 1-114 as if fully set forth under this

Count and further alleges:

116.       Plaintiff was diagnosed with acute stress syndrome on January 28, 2019.

117.       Plaintiff informed Defendant of this condition.

118.       Plaintiff was given clearance to return to work on April 29, 2019.

119.       Despite her medical clearance to return to work, Defendant and Defendant's

agents instructed Plaintiff to file for long term disability.

120.       Plaintiff was not allowed to return to work.

121.       Defendant stopped paying Plaintiff's wages and constructively discharged her on

May 10, 2019 because of Defendant's perception that Plaintiff had a mental impairment

in violation of 42 U.S.C. §12102(3).

122.       As a result of the actions of the Defendant, and Defendant's agents, Plaintiff has

suffered damages in the form of loss wages and benefits, as well as mental anguish,

emotional distress, and humiliation.

**WHEREFORE**, Plaintiff respectfully requests Judgment in her favor against Defendant for $300,000.00 in compensatory and punitive damages, plus costs, reasonable attorney's fees, and for such other relief that justice requires.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests Judgment in her favor against Defendant for $306, 867.00 in compensatory and punitive damages, plus costs, reasonable attorney's fees, and for such other relief that justice requires.

## JURY TRIAL PRAYER

Plaintiff requests Trial by Jury in this matter.

Respectfully Submitted,

/s/ Andrea D. Smith

_____

Andrea D. Smith, Esq., Bar ID # 20532
The Law Office of Andrea D. Smith, LLC
9701 Apollo Drive, Suite 100
Largo, MD 20772
301-246-6805
andrea.smith@smithlawllc.org

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing will be served via private process server to:

CBRE
c/o The Corporation Trust, Incorporated
2405 York Road
Suite 201
Lutherville Timonium, Maryland 21093-2264

/s/ Andrea D. Smith

_____

Andrea D. Smith, Esq.